## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ROBERT WILLIS** | : | |
| **10909 Flint lock Lane** | | : |
| **Ft.Washington,  MD. Lane** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. :** |
| | : | |
| | : | **Judge:** |
| **HON. VINCENT GRAY, MAYOR** | : | |
| **DISTRICT OF COLUMBIA** | | : |
| **1350 Pennsylvania Avenue, NW,** | : | |
| **Suite 221** | : | |
| **Washington, DC 20004** | : | |
| | : | |
| **District of Columbia Public Schools** | : | |
| **825 N. Capitol Street, NE** | : | |
| **Washington, DC 20002** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND CONSTRUCTIVE TERMINATION

Comes now Robert Willis ("Willis" or "Plaintiff"), by and through Counsel, John F. Mercer, Esq., and Mercer Law Associates, PLLC, and alleges against the District of Columbia ("the "Agency" or "Defendant") as follows:

### JURISDICTION AND VENUE

1.     This action arises under 42 U.S.C. § 2000e 5(f)(1)-2000e − 5(f)(3), 28 U.S.C. § 1331, et.seq., 29 U.S.C. 623, 28 U.S.C. § 1441, D.C. Code § 12-309, and D.C. Code §2-1403.16.  This Complaint is timely filed within ninety (90) days of receipt of "Dismissal and Notice of Rights" issued July 18, 2014 (and received on or about July 22), pursuant to 29 C.F.R. 1601.28 (a) by Mindy E. Weinstein, Acting Director, U.S. Equal Opportunity Employment Commission,

Washington, D.C. Field Office, 131 M Street, N.E., Suite 4NW02F, Washington, D.C. 20507 (See Exhibit #1).

This Court has jurisdiction over all claims for relief, including state claims under the supplemental and ancillary jurisdiction of the federal court. Venue is proper in this Court as shall be set out herein below.

### THE PARTIES

2.     **Plaintiff Robert Willis**, is a resident of the State of Maryland. He lives at the address provided in the caption here above. At all times pertinent to this Complaint, Plaintiff was a resident of the Maryland and was employed by the Defendant, District of Columbia Public Schools ("DCPS" or the "Agency").

3.     Defendant, District of Columbia is a municipality, acting herein through and as DCPS, an agency of the District of Columbia which at all times herein was under executive guidance and supervision of Michelle Rhee from 2006 to 2010 and thereafter was succeeded in her position by her Kayra Henderson.

4.     At all times hereunder, Rhee, Henderson and various other employees and agents of DCPS and the District, who acted on behalf of DCPS and under the direction of Rhee and Henderson.  The Agency is an "employer" pursuant to 42 U.S.C. § 2000e, and D.C. Code 1-2502 and was so situated during all times pertinent herein.

### STATEMENT OF FACTS

5.      Plaintiff is of the age of 55 years, and a resident of the state of Maryland. He lives at the address provided in the caption hereof. Plaintiff is a former employee of District of Columbia Public Schools (DCPS). Plaintiff, while employed at DCPS,

Received a verbal notice indicating that he would be terminated from DCPS by the end

of the 2009-2010 school year. As a result presently, Plaintiff remains unemployed despite

his best efforts to obtain employment.

5.    Plaintiff originally commenced employment with District of Columbia Public Schools

("DCPS") as a permanent school principal, ET5, at Frank W. Ballou High School

(Ballou) and he was appointed as a teacher therein on Sept.1999.

6.    October 2, 2009 Plaintiff received a phone call from Mr. Rahaman Branch,

(Mr. Branch), principal Ballou, of informing Plaintiff that he had been eliminated from

his teachers' position at Ballou based on a "reduction in force" (RIF) that

had been mandated by the District of Columbia Public Schools (DCPS).

7.    On October 3, 2009, Plaintiff received a letter from Michelle Rheee (Cancellor

of the DCPS) that his job position in the DCPS was being eliminated as part of a

"Reduction in Force" ("RIF"). The letter was delivered to Plaintiff's home via Federal Express

courier service.

8.    It is Plaintiff's belief, and the belief of many of his colleagues that the purported

"competitive process" used for selecting individual job was a ruse and the

 RIF was unfair and discriminatory and unfair. However, initially Plaintiff and others

 similarly situated were unaware of tactics used against them. Later, and until they were

advised to the techniques used by the Chancellor and others, found that

the "competitive level  was wrongfully used in removing Plaintiff and others.

"Ranking factors" that were to be used would to be considered in determining which

positions  should  would  be  abolished by; (a) Significant relevant contributions,

accomplishments, or   performance;

(b) Relevant supplemental professional experiences as demonstrated on the job (c) Office
or school needs including: curriculum specialized education, degrees, licenses or areas of
expertise; and (d) Length of service. However, the use of the "factors"were manipulated
and misused.

9.      It is Plaintiffs belief Mr. Branch and Chancellor Rhee committed a fraudulent

act which resulted in receiving an unfair evaluation, an incorrect

and unfair competitive ranking level score and separation from Plaintiff's position

as a science teacher in the DCPS. For example Plaintiff received a score that was

outrageously lower than teachers in Plaintiff's competitive level who were "uncertified," had

less "supplemental professional experience," and knew less about and had participated

less in addressing the needs in the competitive area.

10.     The DCPS and the Washington Teachers Union (WTU) have agreed that policy and

budgetary decisions should be made in collaboration within a local School Restructuring

Team (LSTR) that consisted of the principal, student, teachers, parents and community

members. Plaintiff's responsibilities as a WTH Building Representative for Ballou

requires that I chair a committee called the School Chapter Advisory Committee (SCAC).

The SCAC collaborates with the principal to ensure that the WT U and DCPS Collective

Bargaining Agreement is adhered to at the local school level.  Mr. Branch has took an

autocratic approach to the establishment local school policies and the spending of local

school funds. During the past two school years the principals at Ballou

have failed to be transparent about the spending of local school funds.

Evidence has been collected that reveals that Mr. Branch has mismanaged the local

school funds at Ballou. Seven of the sixteen teachers that were included in the RIF

were either a members of the LSRT, SCAC or both.

11.    Within the competitive area: There were 16 teachers and 4 administrative assistants RIFed at Ballou. They are all at least 45 years of age and are Black/ African American.

12.    At the competitive level. (a) Three teachers including Plaintiff were selected for the RIF. All of the teachers  over the age of 45 and Black African American. (b) Before the RIF,  the Science Department consisted of 13 teachers: Black / African American., 6 whites and 1 minority (Iraq). (c) After the RIF the Science Department consisted of 10 teachers: 3 Black / African American., 6 white and one minority. (d) Nine of the 10 teachers remaining in the Science Department after the RIF are less than 35 years of age. (e) Eight of the 10 teachers remaining in the Science Department after the RIF were not certified teachers according to the DCPS requirements.

13.    Plaintiff was given a copy of the Competitive Level Ranking Score Card and Competitive level Documentation form that was created for me by Mr. Branch, the Principal. The highest score that one could receive on the Competitive Level Ranking Score Card is 100%. Plaintiff was issued a total of 5%.  The "Competitive level Documentation form" was a narrative that contained absolute erroneous information concerning my Plaintiff's job performance. (See Exhibit Two)

14.    Upon Plaintiff's request, these documents were sent to me by mail. They were sent on November 2, 2009, by Ms. Traci L. Higgins. Ms. Higgins (is or was) Director of Labor Management and Employee Relations for the DCPS.

15.    On September 28, 2007, Plaintiff met with former Chancellor Michelle Rhee to set goals

for the upcoming academic year.

16.   On or around October 6, 2010, Plaintiff filed a complaint of discrimination with the
      Agency's Office of Equal Employment Opportunity (the "EEOC Office" and D.C. Office
      of Human Rights ("DCOHR"), pursuant to the D.C. Human Rights Act ("DCHRA").  In
      his complaints, Plaintiff alleged that he was a victim of discrimination and disparate
      treatment orchestrated by DCPS, based upon national origin, race, age, and retaliation.

17.   At the time of the discriminations, Michelle Rhee and DCPS employee relations
      personnel continued (1) disparate treatment against older teachers and  accepting and
      treating differently younger teachers, who were Caucasian employees; (2)  engaging
      retaliation against Plaintiff and other similarly situated in protected EEO civil rights
      activities; (3) reprisal for his participation in protected activities; (4) failure of the
      Agency to adhere to personnel policies and practices pertaining to selections and
      terminations during employment with DCPS; (5) failure of the Agency to maintain
      personnel and  employment records in violation of ADEA, Title VII, and the
      Commission's statutes and regulations; (6) purposeful and unfair collusion against
      Plaintiff by DCPS and other   agents unknown; (7)   civil conspiracy for the purpose of an
      unfair and arbitrary "regime   change" perpetuated by mass dismissal/ terminations; (8)
      defamation to Plaintiff's career and business reputation; (9) constructive discharge; (10)
      wrongful termination; (11) falsely forcing Plaintiff from his chosen profession and trade
      so that a less qualified, younger, Caucasian applicant could be appointed to the Position;
      (12) violation of federal and D.C. Human Rights laws regarding discrimination based
      upon race and age;

18. Had a non-discriminatory and properly guided process of selection for the Position been conducted, the Plaintiff's rich work experience, performance evaluations, improvement in the ratings of his school, student test scores, and student attendance would have been considered.

19. That Plaintiff earned several commendations and letters of appreciation for performance of his duties, and developments. (See Exhibit Four).

20. That despite Plaintiff's superior qualifications and demonstrated performance, because of Defendant's steady retaliatory tactics and campaign of defamation and disparagement of Plaintiff's career and reputation, Plaintiff remains unemployed and has not been selected for any position as an educator or school administrator.

21. That Agency has violated D.C. Government merit selection policy section 802.1 which provides " Except as specifically limited or exempted by law or these regulations, all initial appointments to the Career Service of the District government, and all subsequent assignments and promotions of employees in the Career Service, as provided in §§ 1-608.1(a)(1) through 1-608.1 (a)(4), DC. Code (1981), shall be by open competition, involving positive recruitment and examining procedures designed to achieve maximum objectivity, reliability, and validity. All such initial appointments, and subsequent assignments and promotions, shall be made on the basis of merit by selection from the highest qualified available eligible based on specific job requirements with appropriate regard for affirmative action goals and veterans preference as provided by law and as determined under §§ 809 and 810."

22. That Plaintiff has suffered and endured undeserved humiliation, shame, and disparagement of his career and reputation inflicted upon him by the Agency as

discrimination, retaliation, and reprisal for his position and engagement in EEO "protected activities," including demanding his right to be treated equally and fairly.

23. That the Plaintiff, at all times herein presented was an employee of District of Columbia ("DCPS'). At the time of the wrongful acts described herein Plaintiff was over the age of forty -years ("40") years when removed from their positions of employment with DCPS.

24. Plaintiff entered his career with District of Columbia Public Schools ("DCPS") in the year 1999. As a science teacher Plaintiff graduated from Howard University (Master of Education) and Bachelor of Science, Biology Florida State University; 1982. He was hired by the DCPS as an ET-15 Science Teacher at Ballou High School. At all time described herein Plaintiff was assigned to Ballou High School ("Ballou"). During his entire tenure at DCPS all his formal evaluations 25 rated him as "Meets Expectations" or "Exceeds Expectations." **(**See Exhibit. 3**).** In addition, Plaintiff has been an active member of the DC Teacher's Union since September, 2000. **(**See Exhibit Four)

26. October 2, 2009, Plaintiff was notified by Ballou principal, Rahman Branch, ("Principal Branch") that by "Reduction of Force" ("RIF") Plaintiff had been removed from his position as a DCPS Science Teacher. (See Exh. 2). On November 2, 2010 Plaintiff was informed he had been permanently removed from his position due to execution of the "RIF" and permanently dismissed from DCPS.

27. Despite the fact the RIF process was to be fair, reasonable and its process available to Plaintiff and those vulnerable thereto, Plaintiff was not provided with "reasonable notice" as to the essential factors to be considered in removing Teachers from their employment

positions. Also had not been apprised of the nature and type of factors being used in determining his likelihood of removal.

28.    That Plaintiff was not informed of documents and information gathered and used by DCPS administrators to determine whether Plaintiff would be removed.  Plaintiff, and those similarly situated, were not privy to the documents and information used in they're removal.  As a result, Plaintiff and others similarly situated were unable to confront allegations made concerning their professional capabilities, performances, reputations and other factors used to determine whether or they would be removed.  Further, the Plaintiff and those similarly situated were unable to rebut the content of unsupported negative allegations, most of which were replete with misinformation and unsupported hearsay.

29.    That despite Plaintiff's background as a very successful and capable teacher, his positive background was not even minimally acknowledged in determining the process use in determining his professional capability and the quality of his work was completely void of his volunteer activities, advocacy for better and safer physical school conditions. His ten years of "higher than satisfactory" evaluations were purposely and totally set aside by a calculated process execute by DCPS to insure that all positive information related to capabilities, positive performance and achievements garnered by teachers older than forty years old, such as her, would not be considered for being continued as teachers.

30.    In November, 2010, Plaintiff filed a complaint with U.S. Equal Employment Opportunity Commission ("EEOC") alleging he had been the victim of discrimination on the basis of age. He received a "Notice of Rights" mailed July 18, 2014 from the EEOC on or around July 22, 2014 (See Exh.1).

31.    Since being RIFed Plaintiff has not been notified by DCPS of availability of re-

       employment with DCPS; nor has Plaintiff been provided an opportunity to return to his

       previous DCPS position.

## DCPS VIOLATED REQUIRMENTS OF DISTRICT OF COLUMBIA COMPREHENSIVE MERIT PERSONNEL ACT ("CMPA") OF 1978, EFFECTIVE MARCH 3, 1979  AND VIOLATED DUE PROCESS IN REMOVING PLAINTIFF FROM HIS POSITIION OF EMPLOYMENT

32.    Procedures set forth in accordance with the Comprehensive Merit Personnel Act

       ("CMPA"), D.C. Code §§ 1-624. 02 thru 1-624.08 and Regulations 5 DCMR §§ 1500 *et*

       *seq* governs Reductions in Force ("RIF").  It is Plaintiff's belief that the rules were

       purposely manipulated, arranged, and applied in a discriminatory fashion such that

       teachers over forty years in age would be far more likely to be removed from their

       positions of employment than those under Forty years of age. (See Exhibit Seven)

33.    Assuming *arguendo* that D.C. Code § 1-624.02 is the governing procedure herein,

       Plaintiff contends that DCPS intentionally declined to prescribe an order of separation

       reasonably based upon his tenure of appointment, length of service, and work

       performance. Instead, the motivating factor used to dismiss Plaintiff, and other teachers,

       was age.

34.    More importantly, however, Plaintiff was not provided "reasonable notice" pertaining to

       his employee retention standing and opportunity to be meaningfully. As a result Plaintiff

       was denied rebuttal of the grossly negative and dishonest testimony in the narrative

       issued by Principal Branch and others.[1] [Plaintiff believes more than two hundred

       teachers similarly situated to him were discriminated against in the same method used

---

[1] Apparently there were administrative DCPS employees who edited the narrative after it was written by principals (See Exhibit Five). Plaintiff believes these administrative employees may have in many instances, added additional text to the narrative writings without knowledge of the writers.

against his (See Exhibit Five) listing of Ballou teachers under 40 years old who were not RIFFed and similarly situated teachers over 50 Years in age who were RIFFed). Prior to being removed from his employment at Ballou, Plaintiff was not informed as to the process to be used in the "Competitive Level Documentation Form" ("CLDF") as a description of his performance to be contributed by Principal Branch and entered to the ("CLDF") as the Agency's primary justification for Plaintiff's removal from his position of employment.

35.   Principal Branch's function as a unilateral witness describing and assessing Plaintiff's work ethic and performance failed in meeting even minimal standards of credibility or fairness.  His "CLDF" submission was absent third party support as it lacked corroboration of any form.  It contained no indications of date, place or specifics of alleged incidents, failures or unprofessional acts. There was no documentation supporting Principal Branch's allegations. His document was absent of being sworn as being made truthfully and honestly. Further, he was not required by DCPS to swear to an understanding acknowledgment of possibility of punishment of perjury should his written CLDF submission be untrue.[2]   The narrative, describing Plaintiff's alleged performances did not carry reasonable credibility.  The CLDF process should not have been accepted by any reasonable governmental standard of procedure.

---

[2] The absence of swearing as witness to such a document as was presented by Principal Branch in the CLDF without a declaration of possibility of perjury by itself is ground for removing the entire CLDF. Mr. Branch's narrative was not a private declaration but a federal and governmental declaration of supported information. The narrative was without doubt the seminal document relied upon to remove Mr. Willis from federal and District of Columbia employment (See Exhibit Five).

**The Agency Failed To Administer, Score and Rank Employee's One Round of**

**Lateral Competition Accurately, Fairly or In Compliance**

**with RIF Procedures Set Forth in Accordance with the CMPA, D.C. Code §§ 1-624. 02 thru 1-624.08 and Regulations 5 DCMR §§ 1500** *et seq*

36.     Plaintiff filed a Petition with the OEA, on November, 2009, challenging the Agency's decision to RIF him. Plaintiff was not provided particulars of DCPS' basis for termination or pertinent competitive level evaluation documents contemporaneous to the actual RIF.  Notwithstanding, without reasonable information concerning the competitive area and level, coupled with a very specific rating process are all statutorily mandated and are an integral part of DCPS' administration of the RIF process. *D.C. Code 1-624.02 thru 1-624.08 (d)* and *5 DCMR Chapter 15.*

37.     It wasn't until sometime after the November 2, 2009, the effective date of the RIF removal of Plaintiff, that he received copies of his entire negative "Competitive Level Ranking Score Card documents" and the inflated positive copies of the his "competitors" "Competitive Level Ranking Score Cards.

38.     The Plaintiff and others similarly situated were emotionally distraught, professionally and financially devastated and publically humiliated due to DCPS' clearly designed insufficient notice and failure to fairly and honestly construct and operate a valid and honest "Competitive Level Ranking Score" process.

**DCPS MANIPULATED THE LATERAL COMPETITION MAKING IT HIGHLY UNLIKELY THAT TEACHERS OVER FORTY YEARS OF AGE AND OLDER WOULD HAVE AN EQUAL CHANCE IN THE LATERAL COMPETITION**

39.     The "Competitive Level Ranking Score Card" ("CLRSC") did not properly follow the

        regulations and laws of the District of Columbia CMPA. (See Exhibit 5). In addition,

        Plaintiff believes the execution of the RIF violated due process of law.

40.     In the Plaintiff's case the unilateral use of the "narrative" written and placed in the

        "Competitive Level Ranking Score Card" was the mechanism that premeditatedly created

        a system of unfairness that virtually insured Plaintiff and all other employees similarly

        situated be dismissed because of age and seniority. In writing his narrative, Principal

        Branch carefully and coldly removed Plaintiff from his position.  It was done

        methodically, knowingly and absent concern for its destructive consequences.

41.     Plaintiff, a dedicated teacher, had no recourse or opportunity to present or support his

        position because he had no knowledge of the narrative and its impact upon the "score"

        until more than two years (January 2012). He was not aware of the nature and structure of

        the process until long after he had been removed. As a result, Plaintiff and others

        similarly situated had no opportunity to participate in a "lateral competition."

42.     Principal Branch, who had very little actual knowledge of Plaintiff's work, made no

        effort to allow the Plaintiff an opportunity to present his position. Thus, DCPS and its

        administrators therein failed to even minimally satisfy the purpose of D.C Code § 1-

        624.02 and 5 DCMR Chapter 15 (RIF Regulations) by purposely and premeditatedly

        insuring lack of a fair and effective competitive process and permitted the Plaintiff and

        others to be removed from their dismissed based on their ages.

43.     At the time of the RIF Plaintiff was a full time tenured employee with DCPS and

        experienced Science Teacher who had worked for DCPS for more than ten years.

        Approximately two weeks prior to the RIF he was subjected to what might be described

as a "last minute observation."  It was arranged by Mr. Branch without the Plaintiff's

knowledge. The Plaintiff vehemently protested the observation as being illegitimate.

44.     At the time of his "lateral competition" the decisions as to Plaintiff's fate had already

been determined.  Prior to the lateral competition DCPS had already targeted Plaintiff for

removal based upon his age, and age-related stereotyped reasons related thereto.  Some

of those reasons included salary levels, union participation, leadership, strength of

character, outspokenness, demanding of positive improvement of academics, demanding

of physical school improvements and aggressiveness about dangerous school facilities.

45.     Given Plaintiff's work record, experience, qualifications, certifications, and length of

creditable service, when Plaintiff finally received the "Competitive Level Ranking Score

Card," ("CLRSC") he was surprised by the "Rating" and "Weighted Score"  for each and

every of the Factors:  1-4.  (See Exhibit Four) In addition, Plaintiff was devastated by the

accompanied narrative incorporated therein and written by Principal Branch. The

narrative contained flagrant misrepresentations inaccuracies and (See Exhibit Five

Plaintiff's Competitive Level Ranking Score Card). Plaintiff avers the entire narrative is

untrue, unsupported by facts, destructively defamatory, and completely contrary to the

Plaintiff's previous yearly evaluations. Furthermore, the content of the narratives that

suggest that DCPS personnel devised a "cut and paste" approach to encourage principals

and administrators to remove employees who were over 40 years by use of a few

paragraphs of unsupported negative paragraphs.

46.     Documentary and testimonial evidence support the fact that the Plaintiffs "Competitive

Level Ranking Score Card" ("CLRSC"), completed and signed by DCPS, was filled with

factual inaccuracies and misrepresentations regarding Plaintiff's skills, capabilities,

background and contributions to the students and their school.  Based upon Plaintiff's experience as to validity of affidavits of DCPS HR Officers it would be reasonable to believe affidavits of other DCPS executives are also inaccurate and false as well.

## DEFENDANTS FAILED TO SATISFY ITS OBLIGATION OF MEETING DUE PROCESS STANDARDS.

47.   Plaintiff was not previously notified he would be a subject of the RIF on October 2, 2009. However, on that day he was removed from the Ballou High School and ordered not to return except to recover his belongings. On November 2, 2009, he was terminated from his position. It was more than two months after his removal that he became aware some of the actual procedures used by DCPS.  At that point it was much too late respond to the words written by Principal Branch.  Moreover, it was too late for him to recover his professional reputation, his educational standing and his career.

48.   The entire narrative submitted by Principal Branch was factually deficient, defamatory and obviously contrived.

49.   The reality (and irony) was the very day Principal Branch wrote in his narrative Plaintiff had developed more than *two hundred pages of lesson plans*, some of which he was currently using and others of which he was preparing to use in 2010. (Exhibit 4).[3]

52.   Finally, during the time of the RIF, Principal Branch's credibility was questionable within the faculty and the District of Columbia. He was responsible for several financial scandals, to wit: $75,000 from *Ellen DeGeneres* (television celebrity) earmarked for the Ballou band was cancelled and instead of going to the band Ballou

---

[3] Actually the one of the Ballou Teachers, Cynthia Hill, had organized approximately 30 pages of her "lesson Plans." They were available but were not requested by Principal Branch. The records are currently available.

instead spend thousands of dollars to send six students from the 9th grade Academy to Africa; He was also thought to be responsible for the failure of issuing a promise allotment of $750 per teacher for Departments Science supplies.  Under his watch this commitment failed to materialize. [4]

53.    Principal Branch's work ethic and his credibility were not considered in the decision as to whether his narratives were credible. His writing was not evaluated. Despite his negativity, questions from teachers and others concerning his handling of Ballou's budget and his absence when required to be his office were not weighed against his credibility by DCPS. His in when the Agency accepted his narratives.

54.    Based upon Employee's records, his educational reputation, and his evaluations there is no support for the information precipitating his removal from Ballou. Plaintiff received a favorable evaluation for the   school years 2008-2009 from the Ms. Saunders.

55.     Plaintiff rejects the notion he was provided a "One Round of Lateral Competition" in the determination of who was to be removed. In effecting DCMR § 1503.2, Section 1503.2, the Agency cannot blindly take any information as being credible without engaging in a reasonable and serious effort to determine whether the "narratives" provided by principals are honest and factual. To do so is to ignore due process standards.

56.    Principal Branch, in his narrative, provided the equivalence of testimony in his description of Plaintiff's work and capability. However, Principal Branch set forth no oath and he exhibited no factual support. He was allowed to simply provide startlingly

---

[4] There are several witnesses who can testify as to the Branch's reputation as Principal.

bold unsupported negative accusations describing the Plaintiff as incompetent and unworthy of employment as a teacher.

57.     The Plaintiff was not allowed to present a rebuttal. There was no process available for him to bring forth evidence to dispute the content of the narrative prior to his removal. When he found that he had been removed he was not provided a copy of the narrative. Had DCPS legitimately sought information concerning Plaintiff's performance and capabilities there sound, fair and tested was of doing so.  However, DCPS, through Principal Branch, intentionally used a method of determining Plaintiff's value as a teacher that allowed Plaintiff no opportunity to challenge critical errors and untruthful statements.

58.     The "competitive process" was clearly intentionally designed so those with history of competent teaching would be disregarded due to the following:

(a)     Structuring the "competitive process" so as to evade evaluations of teachers during the 2009-2010 year, intentionally eliminating professional records of performance of teachers and leaving no professional observation of teachers' performances.  This exposed teachers to dishonest and false information as to their 2009-2010 school year performances.

(b)     Structuring the "competitive level competitive" system such that a teacher could only have a maximum of 1 point for previous positive evaluations.  This structure insured that older teachers with positive records would not be fairly credited at all for long-term positive evaluations, educational capability and quality, volunteer efforts long-term relationship with parents and community and other important standards of capability and professional quality.

(c)      Structuring the "competitive level competition" so as to provide the heaviest number of points to rest with the Principal's "narrative"  individually, absent verification or support of others, lack of supporting documents lack of support as to whether a teacher would be pronounced as determined to be "needed" at the school as an employee.

(d)      Structuring  the "competitive level competition"  so as to encouraged principals to be harsh and negative in writing the "narratives"  so as to exaggerate descriptions of teachers over forty in extreme negative descriptions of their performance without basis or substantiation assuring teachers over forty would be removed.

(e)      Structuring the "competitive level competition"  so as to weighed the "narratives" so that the narrative, by itself, if  issued the maximum amount points ("10"), would be sufficient in points by itself to remove the teacher from her/his position.

(f)       Structuring the "competitive level competition" such that the principals who participated in drafting the narratives did not see the final narrative document until after it had been completed by DCPS administrators who had full authority to modify, adjust, rewrite the Principal's narrative to make a teacher appear even worse than the narrative written by the Principal. Denying teachers over forty a reasonable opportunity for confrontation or rebuttal.

(g)      Structuring the "competitive level competition" so as make sure the Principals did not sign the narratives after they were edited and finalized by administrators and insuring that Principals did not have to swear as to the truth of the narratives nor swear that they understood being truthful in writing the narratives would expose them to perjury.

59.     That in removing Plaintiff from his position, DCPS purposely violated, circumvented and

disregarded the merit hiring and promotional system required by laws of the District of

Columbia used to hire and promote (and remove) D.C. Government employees.

60.     That in refusing to retain Plaintiff who was the most qualified applicant for the position,

it is evident that qualifications and capability were not valued in employees over the age

of forty.

**COUNT ONE: THE COMPETIVE LEVEL PROCESS WAS CORRUPTED BY DCPS AND USED SPECIFICALLY TO REMOVE TEACHERS MORE THAN FORTY YEARS OF AGE IN VIOLATION OF THE AGE DISCRIMINATION ACT OF 1967**

Count One incorporates by reference paragraphs One through sixty of the Complaint.

61.     That Plaintiff, an African American Male, at the age of 59 was removed from his position

with DCPS because he was above the age of Forty (40) years.  Though he was entitled

under Comprehensive Merit Personnel Act ("CMPA"), D.C. Code §§ 1-624. 02 thru 1-

624.08 and Regulations 5 DCMR §§ 1500 *et seq* to compete with other teachers to

maintain his position, he was not given a fair opportunity to do so because the

competitive structure was specifically fashioned to ensure Teachers over the age of  Forty

(40) years in age were extremely exposed to being removed from their positions of

employment, while an exceedingly high level which those teachers under Forty (40)

Years  of age were exceedingly like to maintain their positions of employment.

**COUNT TWO: VIOLATION OF DUE PROCESS**

62.     Count One incorporates by reference paragraphs One through sixty-one of the

Complaint.

63.    That the Plaintiff and others similarly situated had no knowledge of the system by which they would be judged as to being necessary as they had no information as to the nature of the "competitive competition" or the way it was modeled and used.

65.    That Plaintiff had no reasonable notice of the nature of the competitive competition and had no information as to how the competition would be operated and therefore could not have been prepared for the actions take to remove him from his position.

66.    That Plaintiff was intentionally placed in a situation where he could not protect his position of employment with DCPS because the structure of the narrative, and the process had been organized in a way that he could not have protected his position and could not have fairly competed with teachers under the age of Forty Years ("40") old who were protected by not having to present their background, experience, success in education applied for the Position, was the most qualified applicant for promotion to the Position, and was denied the position solely because he is an African American male.

## COUNT THREE: DEFAMATION OF CHARACTER AND BUSINESS DEFAMATION

67.    Count Two incorporates by reference paragraphs One through sixty-six and That the Defendants made a specific effort to ruin Plaintiffs' reputations and to remove them perpetually from seeking, pursuing, creating and /or achieving positions in any area of education or other professional work.

68.    The narratives describing them have purposely been used to damage each and every one of the Plaintiffs professional and personal reputations Plaintiff by publishing false, dishonest, factually deficient, defamatory and contrived information.  The information has moved nationally and internationally. Additionally, the false statements in the competitive level review forms were shared with others further harming the Plaintiff.

69.   The false statements specifically spoke Plaintiff's professional and business reputation.

70.   The Defendants knew, or should have known, the statements made in the narrative were false, wrongful, and would damage Plaintiff's personal and professional reputation.

**WHEREFORE THE PREMISES CONSIDERED, PLAINTIFF PRAYS,**

71.   That for the actions of invidious discrimination alleged in Count One of the complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to: reinstatement, front pay, back pay with bonuses, merit-performance increases, awards, retirement contributions, and all leave and benefits of the ET-15 with a teaching assignment, and/or its successor position, in addition to applicable compensatory damages, in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00);

That for the actions of invidious violating Due Process alleged in Count Two of the Complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to: reinstatement, front pay, back pay with bonuses, merit-performance increases, awards, retirement contributions, and all leave and benefits of the position of ET-15 with a teaching assignment , and/or its successor position, in addition to applicable compensatory damages, in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00).

That for the actions of Defamation alleged in Count Three of the Complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to: damages for harm done to professional, business, and personal reputation in the amount  of THREE HUNDRED THOUSAND DOLLARS ($300,00.00).

That for the actions of invidious discrimination and defamation alleged in Counts One through Three of the Complaint, the Plaintiff be awarded damages against the Defendants, including but not limited to, front pay until Plaintiff's retirement age of Sixty-Five.

That because the above actions by the Defendants in each and every count herein were committed intentionally, willfully, and maliciously, and Plaintiff prays for compensatory damages (including past, present, and future mental and medical health bills, prescription expenses, parking fees, and all other related costs attendant with seeking psychiatric and medical help to alleviate pain and suffering based on stress, embarrassment, humiliation, mental anguish, depression, and physical injuries) due to Defendants' Age discrimination and hostility created in the work place in the amount of TWELVE MILLION, FOUR HUNDRED THOUSAND DOLLARS ($12,400,000.00).

That for the above actions of invidious discrimination by the Defendants alleged in all counts herein, Plaintiff prays for attorney's fees, meeting expenses, transportation and parking costs for medical and mental health related visits, alternative dispute resolution meetings, depositions, and court costs, as well as pre-judgment interest for all damages listed above.

Plaintiff seeks judgment in his favor and prays for payment of all recoverable costs.

Respectfully submitted,


   /s/  John F. Mercer
John F. Mercer, Esq.
Bar # 184549
Mercer Law Associates, PLLC
1629 K Street, NW, Suite 300
Washington, DC 20036

Mobile: 240.535.8758
Telephone: 202.349.1686
Email: jmjmercer@aol.com
Counsel for Plaintiff

### JURY TRIAL DEMAND

The Plaintiff demands a jury trial in this matter pursuant to Rules 38(b) and 5(b) FRCP.

　/s/  John F. Mercer　　　　
John F. Mercer, Esq.

Date: October 20, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint will be delivered to Defendant's Counsel, via personal delivery this October 20, 2014

　/s/  John F. Mercer　　　　
John F. Mercer
Counsel for Complainant