# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cv-1746 (KBJ) |
| | ) | |
| VINCENT GRAY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Robert Willis worked as a biology teacher in the District of Columbia

Public School system ("DCPS") for more than twenty years before he was notified that

his position would be terminated as part of a district-wide reduction in force ("RIF").

The RIF, which occurred in the fall of 2009, was quite contentious; and this was

especially so because DCPS had hired more than 900 teachers in the preceding months,

many of whom were under the age of 40 and new to teaching (unlike many of the

veteran teachers who were terminated as part of the RIF).  In 2014, Willis filed the

instant lawsuit against the District of Columbia ("the District"), claiming that the RIF

violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et*

*seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, because

it targeted teachers on the basis of race and age and was, in fact, a pretext for the

unlawful removal of older, African-American teachers.[1]  Willis's pleading further

---

[1] In the caption of his amended complaint, Willis identifies the Honorable Vincent Gray, former mayor of the District of Columbia, as the defendant.  (*See* Am. Compl., ECF No. 30, at 1.)  However, Willis refers to "the District" as the defendant throughout the pleading (*see, e.g.*, *id.* ¶ 25) and only mentions Gray in the caption.  Moreover, and in any event, "claims against [District] Officials in their official capacities are effectively claims against the District[.]"  *Holmes-Ramsey v. Dist. of Columbia*, 747 F.

alleges that the decision Willis's supervisor made to discharge him in particular was unlawful discrimination on the basis of his age and rage, and that, in the process of implementing Willis's discharge, the District also violated Title VI of the Civil Rights Act of 1964, *see* 42 U.S.C. § 2000d *et seq.*, and the First, Fifth, and Fourteenth Amendments of the U.S. Constitution and District of Columbia common law.

Before this Court at present is the District's motion to dismiss Willis's amended complaint or, in the alternative, for summary judgment, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and Rule 56(c).  (*See* Def.'s Mot. to Dismiss Am. Compl., or, in the Alternative, for Summ. J. ("Def.'s Mot."), ECF No. 31.)  For the reasons explained fully below, this Court has concluded that the District's motion to dismiss Willis's amended complaint must be **GRANTED IN PART AND DENIED IN PART**. To the extent that Willis has brought Title VII and ADEA claims that challenge the basis for the district-wide RIF and/or how the District implemented the RIF as a whole, such claims must be dismissed as precluded by prior litigation.  *See Washington Teachers' Union Local #6 v. Rhee* ("*WTU Local*"), No. 2009 CA 007482 B (D.C. Sup. Ct. 2012).  But the aspect of Willis's Title VII and ADEA claims that maintains that he was specifically selected for termination for discriminatory reasons can proceed. Willis's other constitutional, statutory, and common law claims are all subject to dismissal on statutes of limitations grounds.  A separate Order consistent with this Memorandum Opinion will follow.

---

Supp. 2d 32, 42 (D.D.C. 2010).  Therefore, this Court interprets Willis's amended complaint as pleading claims only against the District of Columbia.

## I.    BACKGROUND

### A.    Background Facts[2]

#### 1.    Willis's Employment With DCPS

Willis is a African-American man who, according to the amended complaint, began his career with DCPS in 1985 as a biology and mathematics teacher and was 51 years old at the time his employment was terminated. (*See* Am. Compl., ECF No. 30, ¶¶ 28, 35.) Willis began teaching at Frank W. Ballou High School in 1886; he received tenure there in 1989. (*See id.* ¶ 28.) Willis allegedly taught regular and Advanced Placement ("AP") biology and was Ballou High School's only certified AP biology teacher from 1988 until his termination in 2009. (*See id.* ¶ 5.) According to the amended complaint, Willis also received satisfactory performance evaluations throughout his decades of teaching with DCPS (*see id.* ¶ 61), and he once even received an award from President Bill Clinton "for his services as a teacher at Ballou [High School]" (*id.* ¶ 9).

#### 2.    The 2009 DCPS Reduction In Force

On October 2, 2009, Ballou High School's principal, Rahman Branch, notified Willis that his teaching position had been selected for elimination as part of a district-wide RIF. (*See id.* ¶¶ 29, 62.) The following day, Willis received a letter from DCPS Chancellor Michelle Rhee, confirming that his position would be as part of the RIF. (*See id.* ¶ 30.) The District officially terminated Willis from DCPS on November 2, 2009. (*See id.* ¶¶ 62, 87.) According to Willis's complaint, the only two other science

---

[2] The facts recited herein, which are generally undisputed, are drawn from Willis's amended complaint, which must be accepted as true for the purpose of the Court's analysis of the District's motion to dismiss. *See, e.g.*, *Suarez v. Colvin*, 140 F. Supp. 3d 94, 99 (D.D.C. 2015) (citation omitted).) Also, where noted, the Court has relied upon the parties' briefs and exhibits.

teachers at Ballou High School who were selected for the RIF were African American and over the age of 45. (*See id.* ¶ 45.)

Willis specifically alleges that "Rhee, Branch[,] and others were using the RIF as a cover for their actual motive and purpose of terminating older black American teachers [such] as Mr. Willis on the basis of their age and race," and that "they intentionally and deliberately[] engineered [the] 'RIF Criteria' in a way calculated to earn veteran teachers like Mr. Willis fewer or no weighted points, and to rob them [of] the very best thing they had going for them—their long-term service and tenure[.]" (*Id.* ¶ 37.) Willis's amended complaint also repeatedly assails the District's implementation of the RIF district-wide. In this regard, Willis contends that the District hired 946 new employees in the months before the RIF (*see id.* ¶ 5), and that the RIF was a "guise" for implementing a district-wide "'change of workforce' and elimination of black veteran teachers like Mr. Willis" (*id.* ¶ 54).

With respect to its description of how the District accomplished the allegedly discriminatory RIF, the amended complaint asserts that DCPS mandated that four criteria "were to be considered in determining which positions would be abolished" as part of the RIF:

    a.    [s]ignificant relevant contributions, accomplishments, or performance;
    b.    [r]elevant supplemental professional experiences as demonstrated on the job[;]
    c.    [o]ffice or school needs including: curriculum specialized education, degrees, licenses[,] or areas of expertise; and
    d.    [l]ength of service.

(*Id.* ¶ 32.) Willis's amended complaint further alleges that these factors "were [then] manipulated and misused[,]" and that "the purported 'competitive process' used for selecting individual job[s] was a ruse[.]" (*Id.*) With respect to Willis in particular,

Principal Branch allegedly ranked Willis with "a score of 5% out of a 100, [which] was outrageously lower than teachers in [Willis's] competitive level who were uncertified,[] had less 'supplemental professional experience,' and knew less about and had participated less in addressing the needs of students [and] their parents, DCPS in general, and . . . Ballou High School." (*Id.* ¶ 33; *see also id.* ¶¶ 39–40 (listing examples of alleged "lies" contained in Willis's competitive level evaluation).) According to the amended complaint, Branch further justified his poor evaluation of Willis by citing Willis's "negative attitude[,]" which was allegedly said to be based on Willis's having "align[ed] himself with teachers that foster conflict and resistance to implementing the school improvement plan." (*Id.* ¶ 41.) In addition to alleging that Branch had "discriminatory motives of age[] and race" with respect to his evaluation of Willis (*id.* ¶ 35), the amended complaint also asserts that Branch's evaluation of Willis "was retaliatory, because . . . Mr. Willi[s] accused [Branch] of [m]ismanaging [f]ederal [f]unds and donated funds" (*id.* ¶ 8).

### B. Procedural History

Willis filed a discrimination complaint with the Equal Employment Opportunity Commission on October 6, 2010 (*see id.* ¶ 49); he received a notice of his right to sue on July 22, 2014 (*see id.* ¶ 66). He then timely filed the instant lawsuit. (*See* Compl., ECF No. 1.) On April 23, 2015, the District filed a motion to dismiss the complaint or, in the alternative, for summary judgment (*see* ECF No. 12). The District's motion apparently prompted Willis to file a motion seeking leave from this Court to file an amended complaint (*see* ECF No. 27), which the Court granted (*see* Min. Order of Sept. 15, 2015). Willis filed the operative amended complaint on October 1, 2015. (*See* Am. Compl., ECF No. 30).

Willis's amended complaint has eleven counts. Counts I and II claim age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (*See id.* ¶¶ 99–100 (Count I); *id.* ¶¶ 101–05 (Count II).) Counts III and IV allege race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (*See id.* ¶¶ 106–09 (Count III); *id.* ¶¶ 110–14 (Count IV).) Counts V, VI, and VIII—which are brought pursuant to section 1983 of Title 42 of the United States Code—allege violations of Willis's constitutional rights of freedom of speech, due process, and equal protection violations. (*See id.* ¶¶ 115–31 (Count V, Free Speech and Due Process); *id.* ¶¶ 132–36 (Count VI, Equal Protection); *id.* ¶¶ 153–57 (Count VIII, Equal Protection).) Count VII-1 alleges race discrimination under federally assisted programs in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.* (*See id.* ¶¶ 137–43.)[3] Finally, Counts VII-2, IX, and X allege District of Columbia common-law violations. (*See id.* ¶¶ 144–52 (Count VII-2, Defamation); *id.* ¶¶ 158–64 (Count IX, Wrongful Termination in Violation of Public Policy); *id.* ¶¶ 165–71 (Count X, Intentional Infliction of Emotional Distress).)

On October 2, 2015, the District filed a renewed motion to dismiss the amended complaint or, in the alternative, for summary judgment, which argues that all of Willis's claims fail for various reasons. (Def.'s Mot. at 1.) Specifically, the District asserts that the doctrine of res judicata bars Willis's claims of age and race discrimination (Counts I through IV), because "[f]ive years ago, [Willis's] union brought (and ultimately lost) a

---

[3] Willis's amended complaint includes two counts numbered as "Count VII." (*See* Am. Compl. at 47, 49.) For clarity, this Court will refer to the first as Count VII-1 and second as "Count VII-2."

case on his behalf that was based on the same age [and race] discrimination allegation[s] that [Willis] makes here." (*Id.* at 1–2.)[4] The District further maintains that this Court "lacks jurisdiction to determine whether the RIF was properly implemented[,]" because "only the Office of Employee Appeals [] has jurisdiction to consider whether an agency properly implemented RIF procedures." (*Id.* at 2.) And the District also challenges each of the remaining claims based on the applicable statutes of limitations (*see id.* at 3) and on pleading-defect grounds (*see, e.g.*, *id.* at 2–4 ("Plaintiff cannot maintain a claim under the First Amendment . . . because he does not allege a statement of public concern" and "Plaintiff's defamation allegations . . . fail because the alleged statements are privileged and his allegations are fatally vague.")).

Willis responds that his ADEA age discrimination claims and Title VII race discrimination claims are not precluded, mainly because he views the prior union litigation as concerning whether or not "Defendants' 2009 RIF was . . . planned[] or executed in accordance with the laws authorizing it" (Pl.'s Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), ECF No. 33-4, at 19); by contrast, according to Willis, the particular allegation here is that, "in implementing their so-called RIF," the District acted with a discriminatory motive, such that "the whole RIF construct, and implementation[,] was orchestrated to ensure that the RIF adversely impacted Mr. Willis and . . . similarly situated []science[] teachers" (*id.* at 19–20). Willis also maintains that he has cited to and referenced the District's improper implementation of the RIF as a whole only "to explain and expand his discrimination claim to the Court"

---

[4] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

(*id.* at 20; *see also* Compl. ¶ 117 (alleging that Willis "was removed from his position with DCPS because of his race[,]" and that, because he was intentionally "evaluated under the wrong code[,]" he was "falsely and dishonestly ranked" under the RIF criteria, causing him to lose his job). Willis defends his remaining claims on the merits (*see id.* at 20–30, 30–36, 38–39), and insists that all of his claims are timely (*see id.* at 30, 36–38). The District's motion is now ripe for decision.

## II. LEGAL STANDARDS FOR MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

The District's motion seeks dismissal of Willis's complaint or, in the alternative, summary judgment in the District's favor. (*See* Def.'s Mot. at 1.) A review of the substance of the District's arguments readily reveals that each of its assertions is actually in the nature of an argument about the defectiveness of Willis's pleading and/or this Court's inability to grant the relief that Willis seeks. (*See, e.g.*, *id.* at 1 ("Plaintiff's age discrimination claim is barred by doctrine of issue preclusion."); *id.* at 4 ("Plaintiff's defamation allegations . . . fail because the alleged statements are privileged and his allegations are fatally vague.").) Therefore, notwithstanding its alternative request for summary judgment, the District's motion is properly construed as a motion seeking only the dismissal of Willis's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]

A motion under Rule 12(b)(6) raises the question of whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

---

[5] The District has submitted materials for the Court to review with respect to its res judicata contention (*see* Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 31-1, at 17–19 (citing to Exhibits 2 and 3)), and thus appears to be proceeding pursuant to a belief that a party has to request resolution under Rule 56 (and Rule 12(d)), in order for the district court to be able to take into account facts beyond the

plausible on its face[.]" *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, (D.C. Cir. 2015) (quotation marks and citation omitted). The key to making this evaluation is determining whether the allegations in the complaint are in themselves sufficient to permit a "reasonable inference that the defendant is liable for the misconduct alleged[.]" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (quotation marks and citations omitted). Thus, the "court must accept as true all of the [factual] allegations contained in a complaint[,]" *Harris*, 791 F.3d at 68 (quotation marks and citation omitted), and must draw all reasonable factual inferences in the non-movant's favor, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These tenets are "inapplicable to legal conclusions." *Harris*, 791 F.3d at 68. Rule 12(b)(6) "places th[e] burden on the moving party" to show that the complaint is legally insufficient. *Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2015)).

When a court considers a motion to dismiss under Rule 12(b)(6), the scope of its review generally does not extend beyond the pleadings. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011). However, a court deciding a Rule 12(b)(6) motion to dismiss may take judicial notice of other any public

---

four corners of the complaint in the context of a res judicata argument. But the D.C. Circuit has concluded that "[r]es judicata is an affirmative defense[,]" *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 76 (D.C. Cir. 1997), and that a "district court [may] correctly dismiss[] [a] complaint under the doctrine of res judicata[,]" *Holloway v. Scott*, 767 F. App'x 13, 14 (D.C. Cir. 2019). This is especially so when "the identity of the two [legal] actions can be determined from the face of the [complaint] itself." *Potamitis v. Pittsburgh Plate Glass Co.*, 82 F.2d 472, 473 (8th Cir. 1936). And, here, this Court can take judicial notice of the *WTU Local* in order to address a motion that seeks dismissal on res judicata grounds. *See, e.g.*, *Boling v. United States Parole Commission*, 290 F. Supp. 3d 37, 45 (D.D.C. 2017). In any event, this Court routinely declines to convert Rule 12(b) motions to dismiss into Rule 56.

records from other court proceedings, *see Chamber of Commerce v. Reich*, 897 F. Supp. 570, 574 n.4 (D.D.C. 1995), *rev'd on other grounds*, 74 F.3d 1322 (D.C. Cir. 1996), which the court then considers in addition to the facts contained in the pleadings, s*ee Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted).  Notably for present purposes, the judicial-notice practice can be consequential if a defendant argues that the plaintiff's complaint fails to state a claim upon which relief can be granted on res judicata grounds.  *See, e.g.*, *Hemphill v. Kimberly-Clark Corp.*, 605 F. Supp. 2d 183, 186 (D.D.C. 2009) (taking judicial notice of public records from other proceedings in evaluating whether res judicata barred the plaintiff's claims); *Sieverding v. U.S. Dep't of Justice*, 847 F. Supp. 2d 75, 81 (D.D.C. 2012) (taking judicial notice of a court's own records when considering whether res judicata barred the plaintiffs' claims).

## III.   ANALYSIS

Willis's amended complaint is not a model of clarity.  However, as Willis explains, the "gist of [the] contention and claims in his Amended Complaint and attachments thereto" is that the District acted in a discriminatory manner with respect to its "treatment of its older and black employees[] during implementation of their so-called budgetary-reason-based RIF, in 2009, [and] particularly the Plaintiff Mr. Willis[.]"  (Pl.'s Opp'n at 1.)  Willis also complains about the manner in which he was evaluated under the RIF criteria and was thereby personally selected for termination.  (*See* Am. Compl. ¶ 9.)  Willis's complaint thus appears to challenge Willis's termination from DCPS on three fronts: (1) that the "so-called budgetary[]reason[s]" behind the RIF were, in fact, pretext for illegal discrimination against older, African-

American employees; (2) that the District carried out the RIF in a discriminatory manner that targeted older, African-American employees; and (3) that Ballou High School's principal selected Willis for the RIF because he was older and African American. (Pl.'s Opp'n at 1–2). With respect to Willis's particular selection for the RIF by Principal Branch, Willis also maintains that his termination was in retaliation for his having engaged in speech of public concern protected under the First Amendment; that Branch denied him a pre-termination hearing in violation of the Due Process Clause; and that Branch committed common-law torts in the process of implementing the RIF at Ballou High School. (*See id.* at 29–30.)

As explained fully below, this Court concludes that only the discrimination claims that pertain to his inclusion in the RIF survive the District's motion to dismiss, and even then, only partially so. Specifically, to the extent that Willis's amended complaint challenges either the basis for the RIF or how the District implemented the RIF as a whole, such claims must be dismissed as precluded by the District of Columbia Superior Court decision in *WTU Local*. (*See* Super. Ct. Order in Union Litigation ("Union Litig. Op."), ECF No. 31-5 at 2–12.) Furthermore, the Section 1983, Title VI, and common law claims that Willis has brought based on the procedures that DCPS employed to implement his own selection and termination must be dismissed because the applicable statutes of limitations bar these claims. But to the extent Willis's amended complaint alleges that Principal Branch's specific selection of Willis for the RIF was discriminatory in violation of Title VII and the ADEA, there is federal court jurisdiction and those particular claims are not precluded. Therefore, this one aspect of Counts I through IV of Willis's amended complaint will be permitted to proceed.

**A.** **The Claims in Willis's Complaint That Challenge Why And How The RIF Was Undertaken As A Whole Must Be Dismissed On Res Judicata Grounds**

    1.   <u>Res Judicata Is Implicated When A Prior Legal Action Between The Same Parties Raises The Same Issues Or The Same (Or Related) Claims</u>

"Generally speaking, res judicata is a well-settled doctrine pursuant to which courts preclude parties from contesting matters that they have had a full and fair opportunity to litigate[,] and thereby protect their adversaries from the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Brewer v. Dist. of Columbia*, 105 F. Supp. 3d 74, 84–85 (D.D.C. 2015) (internal quotation marks and alteration omitted) (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[,]" *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), and this same preclusive treatment is afforded to prior determinations of the District of Columbia courts.

At a more granular level, res judicata refers to two different doctrines: claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of *the very same claim*, whether or not relitigation of the claim raises the same issues as the earlier suit[.]" *Id.* at 892 (internal quotation marks and citation omitted) (emphasis added). "Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different

claim[.]" *Id.* (internal quotation marks and citation omitted). While the gist of claim preclusion is "identity of claims and identity of parties[,]" *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999) (per curiam), it is well established that, so long as issue preclusion would "not work an unfairness," once an issue is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation[,]" *Vandivere v. Lynch*, 279 F. Supp. 3d 20, 25 (D.D.C. 2017) (quotation marks omitted) (citing *Montana*, 440 U.S. at 153); *see also Otherson v. Dep't of Justice, I.N.S.*, 711 F.2d 267, 273 (D.C. Cir. 1983). As a practical matter, the application of res judicata means that a subsequent court in a different context "does not review the merits of the determinations in the earlier litigation." *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006) (citation omitted).

Since they both are species of res judicata, claim preclusion and issue preclusion have similar tests that substantially overlap. The claim-preclusion inquiry in the District of Columbia focuses on: "'(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.'" *Peterson v. Washington Teachers Union*, 192 A.3d 572, 575 (D.C. 2018) (quoting *Calomiris v. Calomiris*, 3 A.3d 1186, 1190 (D.C. 2012)). When issue preclusion is considered, courts in the District of Columbia prohibit "the re-litigation of issues determined in a prior action where (1) the issue was actually litigated [and] (2) was determined by a valid, final judgment on the merits[,] (3) after a full and fair

opportunity for litigation by the party [and] (4) under circumstances where the determination was essential to the judgment." *DeWitt v. Dist. of Columbia*, 43 A.3d 291, 300 (D.C. 2012) (internal quotation marks and citation omitted). Thus, there can be no claim or issue preclusion without a prior, actual, and full litigation that resulted in a final judgment, or without identity between the disputing parties (or individuals within which they are in privity) in the cases at issue. *See Smith v. Jenkins*, 562 A.2d 610, 613, 617 (D.C. 1989); *see also Jewish War Veterans of the United States of Am., Inc. v. Mattis*, 266 F. Supp. 3d 248, 252 (D.D.C. 2017) ("A decision's preclusive effect (whether claim preclusion or issue preclusion) bars future litigation of that same cause of action or of the same issue of law or fact litigated between the same parties.").

Significantly for present purposes, claim preclusion extends not only to the particular claims that were *actually* brought and fully litigated in a prior proceeding, but also to claims that *could* have been —and, thus, *should* have been—brought in the context of the prior case. *See Short v. D.C. Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C. 1998) ("[T]he doctrine of claim preclusion will operate to prevent the same parties from relitigation of not only those matters actually litigated but also those which might have been litigated in the first proceeding.") (internal quotation marks and citation omitted). This aspect of res judicata functions as "a rule against claim splitting[,]" *Consol. Edison Co. of N.Y.*, 445 F.3d at 450, because it requires parties to bring all of the claims that they intend to litigate in the first instance, rather than presenting them to various courts at various times, *see Stone v. Dep't of Aviation*, 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common-law rule of claim preclusion

prohibiting the splitting of actions" (citation omitted)). A claim "might have been raised" in a prior litigation if it arises "out of the same transaction" at issue in the prior dispute and out of "a common nucleus of facts[,]" regardless of whether the theories of the two cases differ. *Patton*, 746 A.2d at 870 (internal quotation marks and citations omitted). To determine whether a subsequent claim arises from the same factual nucleus as a previously litigated claim, the Court must "consider the nature of the two actions, the facts necessary to prove each and whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (internal quotation marks and citation omitted).

In light of these long-settled requirements, and as explained fully below, it is clear to this Court that Willis is in privity with the union that previously challenged the RIF in Superior Court on the grounds that it was pretextual, and the Superior Court judge who was assigned to the union's case fully and finally adjudicated its claims. As a result, this Court finds that the essential prerequisites for preclusion—*i.e.*, the identity of the parties and claims/issues that were previously fully adjudicated—are met. And, ultimately, the Court further finds that issue preclusion bars Willis from proceeding with respect to any claim that challenges the basis for the District's decision to implement the RIF as a whole, and claim preclusion bars Willis from proceeding with respect to any claim that challenges how the District designed and carried out the RIF as a general matter.

2.    <u>Willis's Union Previously Challenged The District's RIF As Pretextual, And The Superior Court Finally Adjudicated That Dispute</u>

At the outset, this Court takes judicial notice of the fact that, on October 9, 2009, seven days after Willis allegedly received notice that his position would be terminated as part of a district-wide RIF, the Washington Teachers Union Local #6 ("the Union")—on behalf approximately 200 other DCPS teachers, including Willis—filed a lawsuit in the Superior Court of the District of Columbia challenging the RIF.  *See WTU Local*, No. 2009 CA 007482 B.  In that case, the Union claimed that "DCPS['s] attempt to disguise this mass discharge as a 'RIF' caused by a 'budget shortfall' is clearly a pretextual attempt to sidestep the [Union's collective bargaining agreement] and to discharge a substantial number of veteran teachers[.]"  (Ex. 1 to Def.'s Mot., ECF No. 31-4, at 3–4.)  The Union thus argued that the RIF was not a true RIF at all, but a mass discharge of older teachers that allowed the District to avoid the procedural requirements of the Union's collective bargaining agreement with DCPS.  Among other relief, the Union sought to enjoin the teachers' terminations pending arbitration pursuant to the collective bargaining agreement.  (*See id.* at 7–9.)  The Superior Court denied the Union's request for an injunction (*see* Ex. 3 to Def.'s Mot., ECF No. 31-6, at 2) and, on September 7, 2012, granted summary judgment in favor of the District, finding that, "based on the undisputed material facts in the record, the RIF was undertaken in the fall of 2009 in response to a budget shortfall, and it was indeed a RIF" (Union Litig. Op. at 5).

It is evident on the face of the complaint that Willis's union actually and fully litigated legal claims concerning the allegedly pretextual nature of the District's RIF, and that Willis is in privity with the plaintiff in the *WTU Local* litigation.  Moreover,

there is no dispute that, in *WTU Local*, there was "a final judgment on the merits[,]" *Tabman v. U.S. Dep't of Justice*, 722 F. Supp. 2d 113, 115 (D.D.C. 2010), that was reached "after a full and fair opportunity for litigation[,]" *DeWitt*, 42 A.3d at 300, with respect to a case that had "embodie[d] all of a party's rights arising out of the transaction involved," *Parker v. Martin*, 905 A.2d 756, 762 (D.C. 2006) (internal quotation marks and citations omitted).  Moreover, Willis can be deemed to have been a party to the *WTU Local* litigation against the District of Columbia, because his "interests [were] represented by a party to [the] action," *Carr v. Rose*, 701 A.2d 1065, 1075 (D.C. 1997) (internal quotation marks and citation omitted), and he had a "pre-existing substantive legal relationship" with the Union, which was "party to [that] judgment[,]" *EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448, 451 (D.C. 2012) (internal quotation marks and citation omitted); *see Adams v. Pension Ben. Guar. Corp.*, 332 F. Supp. 2d 231, 238 n.8 (D.D.C. 2004) ("Courts have recognized that unions are in privity with their membership for the purposes of res judicata."); *Hitchens v. County of Montgomery*, 98 Fed. App'x 106, 114 (3d Cir. 2004) (noting that "a decision against a union can bind union members in a subsequent action") (internal quotation marks and citation omitted).  Therefore, *WTU Local* qualifies as a previous final judgment on the merits, following a full litigation by a party in privity with Willis.

        3.      <u>Willis's Challenge That The District Created The RIF For Discriminatory Reasons Is Issue Precluded, And Willis's Claim That The District Carried Out The RIF As A Whole In A Discriminatory Manner Is Claim Precluded</u>

Turning to the remaining requirements for preclusion based on prior litigation, it is evident on the face of the complaint that Willis's union "actually litigated" one of the issues that Willis now seeks to have this Court analyze—i.e., whether the District

implemented the RIF because of budgetary reasons, or whether it did so because of age discrimination. It is also clear that Willis's contention that the District carried out the RIF in a manner that targeted older African-American employees (i.e., that the RIF was implementated in a discriminatory manner) was a claim that "might have been raised" in the *WTU Local* case. Therefore, irrespective of which reading of Willis's complaint is accurate, res judicata bars his district-wide challenges to the RIF.

In *WTU Local*, the Superior Court determined that "the RIF was implemented in response to a shortfall that had been created in the DCPS budget" (Union Litig. Op. at 4), and that "[t]he undisputed facts in the record in no way support [the] claim" that the RIF was "a pretext for terminating more senior teachers" (*id.* at 5 n.3). Thus, the question of whether the District's motivation for the RIF was budgetary, or instead discriminatory, has previously been asked and answered by a court of competent jurisdiction, and, indeed, as this Court previously concluded in a prior analogous case, "the nature of DCPS's 2009 employment action—valid RIF or pretext for mass discriminatory discharge?—was 'properly raised, by the pleadings or otherwise, and was submitted for determination.'" *Brewer v. Dist. of Columbia*, 105 F. Supp. 3d 74, 87 (D.D.C. 2015) (alterations omitted) (internal citation omitted).

It is also clear that "the Superior Court considered (and ultimately rejected) [the Union's] pretext allegation" in a manner that "was essential to its ruling that the defendants were entitled to summary judgment[,]" *id.* at 87–88; and "as a court of competent jurisdiction, the Superior Court's determination that the 2009 employment action was a valid RIF undertaken for budgetary reasons . . . was valid and final[,]" *id.* at 88. This Court also has no doubt that the Union (and therefore Willis, whom the

Union represented during *WTU Local*) had a full and fair opportunity to litigate whether the RIF was in fact a mass discriminatory discharge. *See Brewer*, 105 F. Supp. 3d at 90 ("It is clear that [the Union], on behalf of its members, had the chance to present witnesses, introduce exhibits, challenge contrary evidence, make statements, and receive a determination of the facts and the law[.]"). Thus, to the extent that the instant amended complaint claims that the so-called budgetary-reason-based RIF was, in fact, a discriminatory-reason-based discharge of older and African-American teachers, Willis's challenge is plainly precluded.

Willis's insistence that *WTU Local* does not preclude his challenge because the Superior Court did not consider the ADEA specifically, or race discrimination at all (*see* Pl.'s Opp'n at 6, 17), is misplaced. First, it makes no difference whether the Union invoked the ADEA in *WTU Local*, for "it is clear beyond cavil that for preclusion purposes, an 'issue' is not limited to a 'cause of action.'" *Brewer*, 105 F. Supp. 3d at 89 (internal quotation marks, citation, and alteration omitted). It similarly makes no difference that "[t]he word 'age' was never mentioned in the [Union's] Complaint" (Pl.'s Opp'n at 7); or that the Superior Court's decision "has no mention whatsoever of the words, 'discrimination,' 'age' or 'age discrimination'" (*id.*); or that the Superior Court did not specifically consider whether the RIF was a pretext for a mass discharge on the basis of *race* as opposed to *age*. The Superior Court indisputably found that "[t]he undisputed facts in the record in no way support" the Union's claim that the RIF was "a pretext for terminating more senior teachers who otherwise could not have been discharged." (Union Litig. Op. at 5 n.3.) And "what matters to proper preclusion analysis under these circumstances is whether the parties in the subsequent case have

posed a significant issue of fact that was already asked, considered, and answered by a court of competent jurisdiction in a previous lawsuit." *Brewer*, 105 F. Supp. 3d at 89 (citation omitted).  And, consistent with this contention, and with what other courts have held in similar cases, *WTU Local* and Willis's complaint "both rest on the same disputed factual issue—whether the 2009 terminations were a RIF because they were predicated on budget necessity or a mass discriminatory discharge of veteran teachers— and . . . the Superior Court reached and resolved that issue." *Id.* (internal citations omitted); *see also Proctor v. Dist. of Columbia*, 74 F. Supp. 3d 436, 454 (D.D.C. 2014) ("The plaintiff's ADEA . . . claim[] . . . require[s] proof that DCPS's stated justification for her removal was pretextual. . . . The prior WTU Litigation already determined this precise issue[.]").

If Willis's claim is that, regardless of the motive, "[w]hen Defendants implemented their 2009 'budgetary' RIF, they did it in a discriminatory *manner*," (Am. Compl. ¶ 103, Count II (emphasis added); *see also id.* ¶ 112, Count IV), then claim preclusion bars that challenge, because it appears that that claim could have been brought in the *WTU Local* lawsuit.  As noted above, "the doctrine of claim preclusion will operate to prevent the same parties from relitigation of not only those matters actually litigated but also those which might have been litigated in the first proceeding." *Short v. D.C. Dep't of Employment Servs.*, 723 A.2d 845, 849 (D.C. 1998) (internal quotation marks and citation omitted).  A claim might have been raised in the prior litigation for the purpose of this doctrine if it arises "out of the same transaction" that was at issue in the prior dispute and out of "a common nucleus of facts," regardless of whether the theories of the two cases differ.  *Patton*, 746 A.2d at 870 (internal

quotation marks and citations omitted). In the instant case, the "nucleus of facts" underlying *WTU Local* is the same as the facts that pertain to Willis's claim in this Court that the District carried out the 2009 RIF in a discriminatory manner, and the allegation that the District of Columbia created the 2009 RIF with a discriminatory intent (*i.e.*, the claim in *WTU Local*) is necessarily intertwined with a claim that the District implemented the 2009 RIF in a discriminatory fashion. *Cf. Wynn v. Union Local 237, I.B.T.*, 2019 WL 6799629, at *2 (2d Cir. Dec. 13, 2019) (holding that a prior ruling finding no disparate treatment or discriminatory intent barred a subsequent lawsuit bringing a disparate impact claim). Willis's claim against the district-wide discriminatory implementation of the RIF is, therefore, the type of claim that might have been raised in *WTU Local* such that res judicata precludes it.

**B.    The ADEA And Title VII Discrimination Claims that Challenge Principal Branch's Decision To Include Willis In The RIF Survive Dismissal**

Although the aspects of Willis's complaint that challenge the District's decision to adopt a RIF procedure and its implementation of the RIF as a whole are precluded for the reasons laid out above, the Court concludes that Willis's claim that Principal Branch unlawfully decided to include him in the RIF, in particular, because of age-based and race-based discrimination can proceed. The *WTU Local* litigation most certainly did not settle the issue of whether Principal Branch included Willis in the RIF with discriminatory intent. Nor could the Union reasonably have litigated Willis's individual claim concerning the circumstances of his selection when it undertook to challenge the validity of the RIF district-wide.

To be sure, there is some overlap between the operative nuclei of facts in Willis's pleading and those in *WTU Local*, insofar as both concern the 2009 RIF. But

when this Court "consider[s] the nature of the two actions, [and] the facts necessary to prove each[,]" *Patton*, 746 A.2d at 870 (internal quotation marks and citation omitted), *WTU Local* and Willis's instant claims about his mistreatment as a part of the RIF process are plainly distinct actions that must be resolved by distinct factual and legal findings. For example, there a two different actors allegedly at fault: *WTU Local* dealt with *the District's* decision to implement the RIF within the school district, while Willis's lawsuit alleges that—even if the District's decision to implement the RIF was lawful—*the Ballou High School principal* included Willis in the RIF for unlawful reasons. Moreover, *WTU Local* and Willis's lawsuit would not have "form[ed] a convenient trial unit," *Patton*, 746 A.2d at 870, for Willis's claims are specific to his particular circumstances at Ballou High School while *WTU Local* focused, instead, on the district-wide RIF. Thus, as it pertains to Willis's individualized claims of discriminatory treatment, this Court concludes that res judicata does not bar Willis's individual claims. *See, e.g.*, *Haughton v. Dist. of Columbia*, 315 F.R.D. 424 (D.D.C.), *objections overruled*, 161 F. Supp. 3d 100 (D.D.C. 2014) (proceeding to trial with respect to a claim that the plaintiff's principal unlawfully included him in the 2009 RIF because he had a learning disability and required accommodation).

The District contends that this Court should dismiss Willis's individual Title VII and ADEA claims regardless, because "[o]nly the Office of Employee Appeals . . . has jurisdiction to consider whether an agency properly implemented RIF procedures." (Def.'s Mot. at 21). This argument is meritless. The Office of Employee Appeals ("OEA") is an independent agency of the District government created by the Comprehensive Merit Personnel Act ("CMPA"), *see* D.C. Code § 1–601.01 *et seq.*, that

is empowered to "[h]ear and adjudicate appeals received from District agencies and from employees[,]" *id*. § 1–606.02(a)(2), regarding final agency decisions, including RIFs, *id*. § 1–606.03(a).  With few exceptions—which happen to apply in this case—the CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind.  *See Stockard v. Moss*, 706 A.2d 561, 564 (D.C. 1997).  And it is true that "numerous courts in this Circuit have concluded that they lack jurisdiction to entertain employment-related claims brought by District employees that fall within the province of the CMPA."  *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 78 (D.D.C. 2007) (collecting cases).  But it is also clear that "[l]ying outside the scope of CMPA preemption . . . are claims of workplace discrimination, including sexual harassment, brought under the D.C. Human Rights Act."  *Dickerson v. Dist. of Columbia*, 70 F. Supp. 3d 311, 320–21 (D.D.C. 2014) (citing *Robinson v. Dist. of Columbia*, 748 A.2d 409, 411 (D.C. 2000); *King v. Kidd*, 640 A.2d 656, 664 (D.C. 1993)).  And, of course, the CMPA—which is a District of Columbia law—cannot bar District employees from pursuing relief for discrimination claims brought under federal law.  *See Kelley v. Dist. of Columbia*, 893 F. Supp. 2d 115, 119 n.1 (D.D.C. 2012).

Therefore, Willis's claims that Principal Branch included him in the RIF for discriminatory reasons in violation of the ADEA and Title VII is not the type of claim that must (or even could) fall under the exclusive jurisdiction of the OEA.  And as stated earlier, to the extent that such individual discrimination claims appear in Willis's complaint, res judicata principles do not prevent Willis from pressing them in the instant case.

### C. The Applicable Statutes Of Limitations Bar Willis's Remaining Claims

#### 1. Counts V, VI, VII-1, and VIII (Section 1983 and Title VI Claims)

In Counts V, VI, VII, and VIII of the complaint, Willis alleges that the same facts supporting his ADEA and Title VII claims in Counts I through IV also give rise to a violation of his constitutional rights and, in this regard, he seeks redress under section 1983 of Title 42 of the United States Code and other federal statutory provisions. (*See* Am. Compl. ¶¶ 115–43, 153–57.) For example, in Count V, Willis alleges that the manner in which Branch supported Willis's termination (e.g., writing false narratives about Willis's performance and complaining about Willis's association with certain other teachers) was a violation of Willis's free speech and due process rights under the First and Fourteenth Amendments. (*See id.* ¶¶ 119–120.) In Count VI (which appears to duplicate Count VIII[6]) Willis alleges that the RIF, "on its face and as it was applied to him, violates the Equal Protection Clause of the Fourteenth Amendment[,]" insofar as "[t]he whole process of the 2009 RIF was rigged, and the laws were not applied fairly, justly and equally to older teachers[.]" (*Id.* ¶¶ 136, 157.) And in Count VII-1, Willis alleges that Branch's discriminatory actions in orchestrating his termination in violation of the ADEA and Title VII also support a Title VI claim against the District for discrimination by the recipient of federal financial assistance. (*See id.* ¶¶ 137–43.) The District argues that the applicable statute of limitations bars all of these claims. (*See* Def.'s Mot. at 30.) As explained below, this Court agrees with the District.

---

[6] The Court will dismiss Count VIII because it is duplicative. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81–82 (D.D.C. 2010) ("If plaintiffs have pled any duplicative claims, the duplicates should therefore be dismissed.").

"When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period." *Doe v. Dep't of Justice,* 753 F.2d 1092, 1114 (D.C. Cir. 1985). "Since Section 1983 does not have a built-in statute of limitations, the general three-year statute of limitations imposed by District of Columbia law on claims for personal injury, *see* D.C. Code § 12-301(8), applies." *Proctor*, 74 F. Supp. 3d at 457; *see also Savage v. Dist. of Columbia,* No. 02-7135, 2003 WL 843326, at *1 (D.C. Cir. Feb. 25, 2003) (per curiam). And just as with Section 1983, Title VI lacks its own statute of limitations; thus, "courts have borrowed the statute of limitations from . . . § 1983, which in turn[] rel[ies] on the respective personal injury statute of limitations in a jurisdiction"—and, again, that limitations period is three years in the District of Columbia. *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 237–38 (D.D.C. 2007); *see also Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 15 (D.D.C. 2012).

Willis filed the original complaint in this action on October 20, 2014, which was nearly five years after his alleged termination. (*See* Am. Compl. ¶ 62). As a result, the charged conduct falls outside the three-year limitations period applicable to the claims in Counts V, VI, and VII such that these claims must be dismissed.

### 2. Counts VII-2, IX, and X (Common Law Claims)

Lastly, this Court must consider the common law violations that Willis alleges in Counts VII-2, IX, and X, which arise under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).[7] Willis alleges one count of defamation (Count VII-2), one count

---

[7] Supplemental jurisdiction "is a doctrine of discretion, not a plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed." *Shekoyan v. Sibley Intern.*, 409 F.3d 414, 423 (D.C. Cir. 2005); *see also* 28 U.S.C. § 1367(c)(3). This Court has, in its "sound discretion[,]" elected

of wrongful termination in violation of public policy (Count IX), and one count of intentional infliction of emotional distress (Count X), all arising under District of Columbia law. (*See* Am. Compl. ¶¶ 144–52, ¶¶ 158–64, ¶¶ 165–71.) The District maintains that the applicable limitations period bars each of these claims (*see* Def.'s Mot. at 32–33), and here, again, the District is correct.

With respect to the first two common law contentions—defamation and wrongful termination—Willis's claims are plainly time-barred. In the District of Columbia, there is a one-year statute of limitations for defamation claims pursuant to D.C. Code § 12-301(4). *See also Thompson v. Jasas Corp.*, 212 F. Supp. 2d 21, 26 (D.D.C. 2002). "[T]he statute of limitations applicable to a claim of wrongful discharge in violation of public policy is the three-year 'catch-all' statute of limitations set forth in D.C. Code § 12-301(8)." *Kamen v. Int'l Brotherhood of Elec. Workers*, 505 F. Supp. 2d 66, 78 (D.D.C. 2007). The RIF and Willis's termination both occurred in 2009—in October and November, respectively—which is five years prior to Willis's filing of his initial complaint. Thus, these events clearly fall outside of the statutory limitations period for these common law claims.

Willis's claim of intentional infliction of emotional distress ("IIED") involves a slightly more complex analysis as far as the statute of limitations is concerned, but the Court ultimately reaches the same conclusion. Ordinarily, a claim of "intentional infliction of emotional distress is subject to the District's three-year residual limitation period, D.C. Code § 12-301(8)." *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C.

---

to exercise supplemental jurisdiction over Willis' common law claims. *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).

Cir. 1997); *see also Saunders v. Nemati*, 580 A.2d 660 (D.C. 1990). But it is well established that, where an IIED claim "is intertwined with any of the causes of action for which a period of limitation is specifically provided, [it] is subject to the limitation period for the intertwined claim." *Rendall-Speranza*, 107 F.3d at 920 (internal citations and quotation marks omitted). Here, Willis's complaint alleges "discrimination[] and defamation" in Count X (Am. Compl. ¶ 166), thereby suggesting that his IIED claim is "intertwined" with the discrimination causes of action that he has brought in this lawsuit. Nevertheless, those discrimination claims are subject to a three-year statute of limitations. *See Proctor*, 74 F. Supp. 3d at 457. Therefore, whether intertwined with his discrimination claims or standing alone, Willis's IIED claim is subject to a three-year limitations period, and as a result, Willis's Count X is also untimely.

## IV.    CONCLUSION

For the foregoing reasons, the doctrine of res judicata precludes Willis's ADEA and Title VII challenges to the district-wide creation and implementation of the RIF. By contrast, Willis's claims that Ballou High School's principal discriminated against him in particular on the basis of his age and race are not precluded, and thus Willis may proceed to litigate those Title VII and ADEA claims in this Court. All of Willis's other claims must be dismissed as untimely, given the applicable statutes of limitations. Consequently, and as set forth in the accompanying Order, the District's motion to dismiss Willis's complaint will be **GRANTED IN PART AND DENIED IN PART**.


DATE:  February 18, 2020                          *Ketanji Brown Jackson*
                                                  KETANJI BROWN JACKSON
                                                  United States District Judge